UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| L-CON, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-1526 |
| § | |
| CRC INSURANCE SERVICES, INC. f/k/a § | |
| CRUMP INSURANCE SERVICES, INC., *et* § | |
| *al*, § | |
| § | |
| Defendants. § | |

**AMENDED MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

In this insurance coverage dispute, L-Con, Inc. ("L-Con") sues its excess/umbrella carrier, Interstate Fire & Casualty Company ("Interstate"), and its insurance brokers, Regions Insurance, Inc. ("Regions") and CRC Insurance Services, Inc. f/k/a Crump Insurance Services, Inc. ("CRC"). In its Second Amended Complaint, L-Con seeks a declaration requiring Interstate to defend, on an additional insured basis, Oiltanking Holding Americas, Inc. and its affiliates (collectively, "Oiltanking") against certain claims brought by L-Con employees in a separate lawsuit (ECF No. 90). By third-party complaint against Oiltanking and its insurers, Certain Underwriters at Lloyds of London ("London Insurers"), Interstate seeks a declaration that additional insured coverage is not available to Oiltanking under its excess policy (ECF No. 98). To the extent that coverage is available, Interstate alternatively claims that the London Insurers must share the responsibility of defending Oiltanking. The injured L-Con employees and/or their families have intervened, aligning themselves with Interstate (ECF No. 30).

The parties have filed cross-motions for summary judgment (ECF Nos. 102, 104, 110) as well as a bevy of responsive briefing. Based on these submissions, the record and the applicable law, the Court determines that summary judgment should be GRANTED in favor of L-Con, Regions and CRC. Summary judgment is GRANTED and DENIED in part with respect to the remaining parties.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The June 2, 2012 Explosion and the Underlying Lawsuit

L-Con is a Houston-based engineering and construction firm. Oiltanking, a long-time customer of L-Con, owns and operates a tank facility at the Houston Ship Channel. On June 2, 2012, while L-Con employees were welding at the facility, an explosion occurred tragically killing one employee and injuring several others. The injured employees, their families, and the survivors of the deceased employee (collectively, the "state court plaintiffs" or "Intervenors") sued Oiltanking in Texas state court for wrongful death and personal injuries related to the explosion ("Underlying Suit"). On or about November 22, 2013, after a jury trial, a $21 million judgment was entered against Oiltanking and in favor of the state court plaintiffs.[1] L-Con's primary insurer, American Contractors Insurance Company Risk Retention Group ("ACIG"), accepted defense of Oiltanking in that suit. Subsequently, L-Con filed a state court declaratory judgment action seeking coverage for Oiltanking. The action was later removed to this Court based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1332(a), 1441.

---

[1] Oiltanking unsuccessfully sought to include L-Con as a responsible third party. The judgment is currently on appeal before the Fourteenth Court of Appeals in Houston, Texas.

B.   **The L-Con/Oiltanking Master Service Agreement**

At the time of the explosion, L-Con was performing terminal maintenance work for Oiltanking under a Master Service Agreement ("MSA").[2] Section 13(A) of the MSA required L-Con to provide insurance

> to cover all loss and liability for damages on account of bodily injury, including death . . . caused by or arising from any and all activities carried on or any and all Work performed under any Work Order. [L-Con] shall cause its insurer to name [Oiltanking] as an additional insured on its . . . General Liability and Excess Liability insurance policies . . . .

L-Con agreed to carry at least $1 million per occurrence of commercial general liability ("CGL") insurance for bodily injury (or $2 million per occurrence of combined single limit insurance for bodily injury or property damage), and $3 million in excess/umbrella coverage. L-Con and Oiltanking further agreed that the coverages granted to Oiltanking as an additional insured would "apply on a primary basis over all other valid and collectible insurance owned by and or available to the 'additional insured' [Oiltanking]."

C.   **L-Con's Insurance**

   1.   *Primary Insurance – ACIG Policy*

In an attempt to satisfy its insuring obligations under the MSA, L-Con initially purchased primary CGL insurance from Liberty Mutual Fire Insurance Company ("Liberty Policy").[3] Effective June 1, 2012, however, that policy was replaced by a $2 million primary CGL policy

---

[2] The MSA was originally between Oiltanking and Lexicon, Inc. d/b/a L-Con Construction. Later, following a corporate reorganization, the MSA was assigned to L-Con.

[3] Liberty Policy No. TB2-641-004883-021.

issued by ACIG ("ACIG Policy").[4]  The ACIG Policy covers claims or suits for bodily injury and contains an Additional Insured Endorsement that defines who qualifies as an additional insured and establishes the scope and priority of additional insured coverage.  The endorsement provides in relevant part:

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Name of Person or Organization:

Any person or organization that you [L-Con] have agreed to and/or are required by contract to name as an additional insured.

It is hereby understood and agreed WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your [L-Con's] work" for that insured by or for you [L-Con].

\* \* \*

WHERE SPECIFICALLY REQUIRED BY CONTRACT . . . THE INSURANCE PROVIDED BY THIS ENDORSEMENT IS PRIMARY.  OTHER INSURANCE THE ADDITIONAL INSURED PURCHASES ON ITS OWN BEHALF SHALL APPLY AS EXCESS OF, AND DOES NOT CONTRIBUTE, WITH THE INSURANCE PROVIDED BY THIS ENDORSEMENT. . . .

ACIG defended Oiltanking in the Underlying Suit on an additional insured basis.

---

[4] ACIG Policy No. GL12000043.  L-Con also had in force an excess policy from ACIG with limits of $1.5 million per occurrence (Policy No. GL12X00043).  Per Endorsement No. 17, however, that policy's limits automatically decreased by the same amount the primary policy's limits were increased above $500,000.  There is no dispute that the primary policy's limits were increased to $2 million pursuant to the MSA and that the limits of the $1.5 million policy were reduced to zero by the policy's own terms.  The $1.5 million policy, therefore, is inapplicable to the issues before the Court.

### *2.   Excess/Umbrella Insurance – Interstate Policy*

L-Con also purchased excess/umbrella insurance under a policy issued by Interstate with a $15 million limit per occurrence ("Interstate Policy").[5]  By Interstate's own admission, its policy is a "follow form" policy, incorporating the terms of the underlying insurance—here, the ACIG Policy—to the extent that those terms are consistent with its own terms.  Where the terms between it and the underlying policy are inconsistent, the Interstate's policy terms control.  Coverage exists for liability and damages covered by the ACIG Policy.

The Interstate Policy contains three provisions that are relevant to the outcome of this suit.  First, like the ACIG Policy, it contains a provision defining coverage for an additional insured.  The terms appear in § III(G)(1)(c), which gives L-Con the option to designate as an "insured"

> persons or organizations included as Additional Insureds in "underlying insurance", but only for their liability arising out of operations of the "Named Insured" [L-Con] under this policy.  The limit of Insurance available to that Additional Insured shall be the lesser of
>
> (1)  The amount of coverage that the "Named Insured" [L-Con] has contractually agreed to provide to that Additional Insured; or
>
> (2)  The Limits of Insurance available under this policy.

According to the Second Amended Complaint, L-Con "opted to make Oiltanking an additional insured under the Interstate Policy."

Second, Interstate's policy contains a Cross Suits Exclusion that excludes coverage for "a claim or 'suit' for damages initiated, alleged or caused to be brought about by any 'insured' covered by this policy against any other 'insured' covered by this policy."  Third, the policy includes an "other insurance" provision, found in § VII(H), that provides in pertinent part:

---

[5] Interstate Policy No. UM0-000-5772-7315.

> If there is any "other insurance" available to any "insured" the insurance provided by this policy will apply in excess of all "other insurance", and shall not contribute with such "other insurance".

"Other insurance" is defined as "a policy of insurance available to any 'insured' affording coverage that this policy also affords."

### D. Insurance Oiltanking Purchased on its Own Behalf

Independent of the MSA, Oiltanking carried its own insurance from the London Insurers under a package policy. The policy contains primary and excess coverages with separate limits of liability: Section 1, covering primary liabilities, has a $5 million limit per occurrence ("London $5 Million Primary Policy"); Section 2A, covering umbrella liabilities, applies to "losses excess to Section 1" and has a $46 million limit per occurrence ("London $46 Million Excess Policy") (collectively, the "London Package Policy").[6] There is no dispute that the policy covered operations at Oiltanking's Houston facility in June 2012.

The disputed terms of the London Package Policy are contained in its Primary Insurance Endorsement, which addresses the priority of coverage in the event that Oiltanking is an additional insured on another policy of insurance. The endorsement states in relevant part:

> It is agreed that where the Insured [Oiltanking] is named as an additional insured on the policy(ies) of others, this policy shall only apply in excess of and shall not be contributory with other said policy(ies).

### III. CONTENTIONS OF THE PARTIES[7]

The parties raise multiple grounds for summary judgment related to Interstate's defense

---

[6] London Package Policy No. B0753PE1206378000, effective May 1, 2012 through May 1, 2013.

[7] Unless otherwise stated, Regions and CRC join L-Con's position and the Intervenors join Interstate's position.

obligations to Oiltanking. The pertinent arguments are summarized below.[8]

### A. Availability of Additional Insured Coverage for Oiltanking

Interstate seeks a declaration that Oiltanking is not an additional insured under its policy because Oiltanking's liability did not "arise out of" L-Con's work/operations, as required by the policy's own terms and the terms of the underlying ACIG Policy. The argument is based on the judgment in the Underlying Suit, where Oiltanking's liability was found to "arise out of" its own negligence in failing to protect and adequately warn L-Con's employees of dangerous conditions at the facility, and failing to make those conditions reasonably safe.

L-Con, Oiltanking and the London Insurers seek a declaration that additional insured coverage is available to Oiltanking under the Interstate Policy, upon exhaustion of the ACIG Policy and without contribution from Oiltanking's own insurance. They argue that Oiltanking's liability "arose out of" L-Con's work/operations based on the broad meaning of the phrase as interpreted by Texas courts and based on the undisputed fact that there was a causal connection between L-Con's welding and the explosion.

### B. Interstate's Cross Suits Exclusion

Even if Oiltanking qualifies as an additional insured under its policy, Interstate argues, its Cross Suits Exclusion excludes any coverage for Oiltanking because the Underlying Suit between the Intervenors and Oiltanking is a suit between insureds. Interstate reaches this conclusion based on the theory that, by virtue of their status as employees of L-Con, the Intervenors were insureds under the underlying Liberty Policy issued to L-Con at the inception

---

[8] Additionally, Oiltanking moves for summary judgment on allegations regarding L-Con's contractual indemnity obligations. These allegations are set forth in paragraphs 25 and 26 of Interstate's Second Amended Third-Party Complaint. The allegations are premised on indemnification that Oiltanking may or may not seek from L-Con in the future. Oiltanking answered Interstate's complaint without indicating whether it intends to take this course of action (ECF No. 100). Oiltanking has filed no cross-claims. Because Interstate's indemnity claims turn on, but are not supported by, Oiltanking's responsive pleading, they are premature. Oiltanking's derivative summary judgment arguments are, therefore, not properly before the Court. Consequently, the Court will not address them or any responsive arguments.

of the Interstate Policy (but replaced by the ACIG Policy before the explosion). If insureds under the Liberty Policy, Interstate contends, the Intervenors must also be insureds under the Interstate Policy.

L-Con, Oiltanking and the London Insurers argue that the Cross Suits Exclusion does not apply because the Underlying Suit is not a suit between insureds covered by the Interstate Policy. It is contended that L-Con never designated its injured employees as "insureds" under the ACIG Policy, the insurance that underlay the Interstate Policy at the time of the explosion. Accordingly, they argue, coverage under the ACIG Policy and, by extension, the Interstate Policy, never applied to the employees. L-Con, Oiltanking and the London Insurers insist that Interstate's reliance on the Liberty Policy is erroneous because that policy had expired and was replaced by the ACIG Policy before the explosion. In further opposition, they note that several Intervenors, representing $9 million of the underlying judgment, were only related to L-Con's employees and not employees themselves. That fact, it is claimed, defeats any contention that the Underlying Suit is a suit between insureds.

## C. Policy Limits and Priority of Coverage

Should the Court find that additional insured coverage exists for Oiltanking, Interstate contends that its insurance is excess to the London Package Policy. In its view, its "other insurance" provision requires that the London $5 Million Primary Policy be exhausted before coverage under its policy ($3 million) is triggered on a (3/49) prorated basis with the London $46 Million Excess Policy.

L-Con, Oiltanking and the London Insurers claim that, based on the London Package Policy's Primary Insurance Endorsement, the Interstate Policy forms the first layer of excess coverage. L-Con asserts an alternative argument that Oiltanking and the London Insurers reject.

L-Con argues that Interstate's limits must apply, on a prorated basis, concurrently with the London $5 Million Primary Policy in light of the conflicting "other insurance" provisions contained in the three policies (ACIG, Interstate and London Package policies).  Moreover, L-Con argues, the Interstate Policy requires that the London $46 Million Excess Policy be "available to" Oiltanking before it can be considered "other insurance."  This coverage is excess and thus only "available to" Oiltanking, it is claimed, after the London $5 Million Primary Policy is exhausted.

Oiltanking and the London Insurers assert that no prorated split between the insurers is warranted because the relevant "other insurance" provisions do not conflict.  In their view, the Interstate Policy is primary excess because that policy's "other insurance" provision specifically and exclusively applies to "insureds" under that policy and not to "additional insureds"—as that term is defined in the underlying ACIG Policy—like Oiltanking.

## IV.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The movant bears the initial burden of "informing [the Court] of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a

reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Id.* (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Cases involving the interpretation of an insurance policy are well-suited for summary disposition. *See Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994).

## V.   ANALYSIS AND DISCUSSION

The following points of contention are ripe for summary judgment adjudication: (1) whether the Interstate Policy provides additional insured coverage for Oiltanking, thus requiring Interstate to defend Oiltanking in the Underlying Suit; (2) whether Interstate's Cross Suits Exclusion bars coverage even if Oiltanking is an additional insured; and (3) whether Interstate's additional insured coverage, if it exists, is primary or excess to, or concurrent with, the London Package Policy.

### A.   Principles of Policy Construction

Under Texas law, the same general rules that govern the interpretation of contracts govern the interpretation of insurance policies. A policy must be interpreted to effectuate the intent of the parties at the time the policy was formed. *Ironshore Specialty Ins. Co. v. Aspen Underwriting, Ltd.*, 788 F.3d 456, 460 (5th Cir. 2015); *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *In re Deepwater Horizon*, --- S.W.3d ----, 2015 WL 674744, at *9 (Tex. 2015). Words within an insurance contract are given "their ordinary and generally accepted meaning unless the policy indicates that the parties intended

language to impart a technical or different meaning." *Deepwater Horizon*, 2015 WL 674744, at *9.

"If an insurance contract uses unambiguous language, [a court] will construe it as a matter of law and enforce it as written." *Id*. Where an insurance contract is susceptible to multiple reasonable interpretations, a court must adopt the interpretation most favorable to the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). "The court must do so even if the insurer's interpretation is *more* reasonable than the insured's—'[i]n particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured,' and '[a]n intent to exclude coverage must be express in clear and unambiguous language.' " *Id.* (citations omitted). Nevertheless, a court will not find a contract ambiguous merely because the parties offer contradictory interpretations. *Deepwater Horizon*, 2015 WL 674744, at *9.

### B. Oiltanking is an Additional Insured Under the Interstate Policy

As affirmed by recent Texas Supreme Court and Fifth Circuit decisions, the Court begins with the four corners of the Interstate Policy to determine whether Oiltanking qualifies as an additional insured. *E.g.*, *Ironshore Specialty*, 788 F.3d 456, 460; *Deepwater Horizon*, 2015 WL 674744, at *5. The parties acknowledge that the Interstate Policy is a "follow form" policy that limits coverage to the scope of coverage available under the underlying ACIG Policy. There is no dispute that coverage is available for entities "included as Additional Insureds in 'underlying insurance', but only for their liability arising out of operations of the 'Named Insured' [L-Con]." Consistent with Texas law, the parties urge the Court to look at both policies in making its coverage determination. *See Deepwater Horizon*, 2015 WL 674744, at *8 ("[W]e must consider the terms of an underlying contract to the extent the [excess] policy language directs us to do so."

(citing *Urrutia v. Decker*, 992 S.W.2d 440, 442 (Tex. 1999)).  The parties further agree, based on policy language in the ACIG Policy, that the Court must also consider certain provisions in the MSA that address additional insureds and the extent of coverage for such entities.  *See, e.g.*, *Deepwater Horizon*, 2015 WL 674744, at *7 ("[W]e rely on the policy's language in determining the extent to which, if any, we must look to an underlying service contract to ascertain the existence and scope of additional-insured coverage.").

Applying these principles, the Court finds that Oiltanking is an additional insured under the Interstate Policy.  The Additional Insured Endorsement contained in the ACIG Policy extends coverage to "[a]ny person or organization that you have agreed to and/or are required by contract to name as an additional insured."  Section 13(A) of the MSA expressly required that L-Con name Oiltanking as an additional insured on its CGL and excess policies.  By the terms of its Additional Insured Endorsement, ACIG agreed to insure this undertaking, thus meeting the MSA requirement.

The Court's analysis does not end there, however.  The availability of additional insured coverage additionally turns on whether liability arises from "your [L-Con's] work" for Oiltanking (ACIG Policy), or from "operations of the 'Named Insured' [L-Con]" (Interstate Policy).  Section V(20) of the ACIG Policy defines "your work" as, *inter alia*, "[w]ork or operations performed by you [L-Con] or on your behalf."  Although neither policy defines "operations" or "work" as an independent term, both policies effectively direct the Court to consider the MSA for elucidation by premising coverage on the performance of work obligations that, under the circumstances, originate from the MSA.  *See id.* at *5 ("We do not require 'magic' words to incorporate a restriction from another contract into an insurance policy; rather, it is enough that the policy clearly manifests an intent to include the contract as part of the

policy."). In the MSA, "work" means "all labor, goods, materials and services required to be performed and furnished by Contractor [L-Con]." As Interstate acknowledges, L-Con provided labor and services to Oiltanking pursuant to the MSA. The Court makes every effort to "ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement[s]." *Id.* at *9. Guided by this principle, the Court finds that the only reasonable construction of the ACIG and Interstate policies is that L-Con's work includes the welding operations its employees were performing when the explosion occurred. *See id.* at *10 ("In construing the additional-insured provision, we give effect only to reasonable interpretations of the contract's terms.").

The remaining piece of the additional insured analysis requires the Court to assess whether Oiltanking's liability "arose out of" L-Con's welding operations. The Texas Supreme Court has held that, in the insurance context, "'arise out of' means that there is simply a 'causal connection or relation,' . . . which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (internal citation omitted) (citing cases). The Fifth Circuit has likewise recognized that in Texas "the phrase 'arising out of' has a broad definition favoring coverage—all that is needed is an 'incidental relationship' between a claim and the conduct that the policy describes." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 312–13 (5th Cir. 2010) (citing cases).

*Utica* and *Amerisure* compel the finding that Oiltanking's liability "arises out of" L-Con's work/operations. The Court employs the "but for," or "incidental relationship," test to reach this conclusion. The underlying fatality and personal injuries would not have occurred but for the labor and services provided by L-Con's employees in carrying out the MSA. Interstate's

implication to the contrary—that is, L-Con employees were injured doing something other than L-Con's work—does not present a realistic interpretation of the facts of this case.

Without citing any supporting case law, Interstate contends that the claims against Oiltanking did not "arise out of" L-Con's work because negligence was never attributed to L-Con in the Underlying Suit. In that proceeding, the state court judge determined that evidence was lacking to permit the jury to allocate fault to L-Con. L-Con was not identified as a responsible third party on the jury charge pursuant to this determination. Ultimately, judgment was entered against Oiltanking based on negligent acts attributable to Oiltanking alone. Interstate's position conflates the issue of Oiltanking's negligence with the issue of whether the claims "arose out of" L-Con's work, however. These are separate and distinct issues. Under Texas law, it is not necessary that L-Con be found liable to trigger additional insured coverage for Oiltanking. Such a requirement disregards *Amerisure* and *Utica*. *See Amerisure*, 611 F.3d at 312–13; *Utica*, 141 S.W.3d at 203 (citing cases).

In sum, there is no doubt that the underlying ACIG Policy was endorsed to name Oiltanking as an additional insured. There is likewise no doubt that the personal injury and wrongful death claims bear a causal relationship to L-Con's work at Oiltanking's facility; the injuries/fatality would not have occurred "but for" the work and operations being performed by L-Con employees. Additional insured coverage is, therefore, available to Oiltanking and Interstate is responsible for providing it.

### C. Cross Suits Exclusion Does Not Apply

Interstate contends that its Cross Suits Exclusion, which excludes coverage for lawsuits between insureds, bars coverage for Oiltanking even if Oiltanking is an additional insured under its policy. The argument does not comport with Texas law, however. Generally, insurance

policy exclusions are construed narrowly in favor of coverage. *E.g.*, *Nat'l Union Fire Ins.*, 811 S.W.2d at 555. In Texas,

> [t]he insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. Once the insurer has established that an exclusion applies, the burden shifts back to the insured to prove that an exception to the exclusion applies.

*Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citing *Telepak v. United Servs. Auto. Ass'n,* 887 S.W.2d 506, 507 (Tex. App.—San Antonio 1994, writ denied)); *accord Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied) (acknowledging that Texas Insurance Code places burden on insurer to prove any exception to coverage); *see Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 450 (Tex. App.—Dallas 2013, pet. denied).

Interstate fails to meet its burden. The company takes the position that the definition of "insured" in the initial Liberty Policy (of underlying insurance) governs the determination of whether the Underlying Suit is a suit between insureds. That definition, it argues, covers employees of L-Con. Interstate's position is untenable regardless of whether L-Con's employees were insureds under the Liberty Policy. That policy expired before the explosion. Subsequently, the ACIG Policy replaced it as the insurance to underlie Interstate's excess coverage. The expiration of the Liberty Policy is not disputed by any party, including Interstate. It is therefore hard to imagine how the terms of that policy impact this coverage dispute.

The ACIG Policy gives L-Con the option to include its employees as insureds for acts within the scope of their employment. L-Con denies exercising that option and Interstate presents no evidence to refute this assertion. Absent such evidence, Interstate cannot meet its burden of proving that the employees who sued Oiltanking were insureds under the ACIG

Policy. In accordance with Texas law, the Court construes the Cross Suits Exclusion narrowly and concludes that it does not apply.

### D. Maximum Limit of Interstate Policy is $3 Million

The parties agree that to the extent that excess coverage is available to Oiltanking under the Interstate Policy, coverage is limited to $3 million. The Interstate Policy specifically incorporates the MSA for purposes of determining the insurance limits applicable to additional insureds. Section III(G)(1)(c) provides that an additional insured is limited to the lesser of "[t]he amount of coverage that the 'Named Insured' [L-Con] has contractually agreed to provide to that Additional Insured" or the limits of insurance available under the Interstate Policy. Exhibit IV § B of the MSA states that additional insured coverage is afforded "only to the extent of coverage required by such contracts as respects operations performed in connection with the insured." The MSA requires L-Con to procure $3 million in excess coverage. The Interstate Policy exceeds this requirement, providing up to $15 million per occurrence. According to the policy's unambiguous terms, notwithstanding this greater coverage, Interstate is not required to pay more than $3 million.

### E. Interstate's Policy is Excess to ACIG Policy and to London $5 Million Primary Policy

Because the parties do not dispute that the Interstate Policy is excess to the ACIG Policy, the Court focuses on the extent to which Interstate's policy is primary or excess to the London Package Policy. Several "other insurance" provisions are at play in this regard. The ACIG Policy's Additional Insured Endorsement states that "other insurance the additional insured purchases on its own behalf shall apply as excess of, and does not contribute, with the insurance

provided by this endorsement."[9]  Interstate's policy does not "follow form" with these terms. Instead, section VII(H) of that policy provides that "[i]f there is any 'other insurance' available to any 'insured' the insurance provided by this policy will apply in excess of all 'other insurance', and shall not contribute with such 'other insurance.' "  An "other insurance" provision also appears in the London Package Policy.  Its Primary Insurance Endorsement provides:  "[W]here the insured [Oiltanking] is named as an additional insured on the policy[ies] of others, this policy shall only apply in excess of and shall not be contributory with other said policy(ies)."

These "other insurance" provisions are in conflict based on *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583 (Tex. 1969).  In that seminal case, the Texas Supreme Court held:

> When, from the point of view of the insured, [it] has coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict in the provisions.

*Id.* at 589.  This is the case even when "a plain language reading of the policies would not have left the insured without coverage." *Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 313 (5th Cir. 2010) (citing *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639 (5th Cir. 2004)).

To resolve the "repugnancy" between the conflicting provisions, like *Hardware Dealers*, the Court "ignor[es] the . . . offending provisions" and prorates the liability between the policies up to the applicable limits.  *Hardware Dealers*, 444 S.W.2d at 589–90; *see Travelers Lloyds Ins. Co. v. Pacific Employers Ins. Co.*, 602 F.3d 677, 684–87 (5th Cir. 2010) (applying *Hardware Dealers*); *Willbros RPI*, 601 F.3d at 314–15 (same).  This approach yields the following result:

---

[9] The Court observes that this provision appears to be consistent with the coverage ranking expressed in the MSA.

(1) the Interstate Policy and the London $5 Million Primary Policy together form the first layer of excess coverage, and (2) upon exhaustion of the London primary policy limits, the London $46 Million Excess Policy applies as the next layer.[10]

## VI.    CONCLUSION

Based on the foregoing analysis and discussion, the Court determines that Oiltanking is an additional insured whom Interstate must defend.  The Court further determines that Interstate and the London Insurers must provide, on a prorated basis, the first ($8 million) layer of excess coverage, and that the London Insurers must provide the next layer of coverage.  Accordingly, the Court grants summary judgment favoring L-Con, Regions and CRC.  Summary judgment is granted and denied in part with respect to Interstate, the Intervenors, Oiltanking and the London Insurers.

It is so **ORDERED**.

SIGNED on this 24th day of August, 2015.

_____
Kenneth M. Hoyt
United States District Judge

---

[10] The Court treats Oilanking as an "insured" under the Interstate Policy because, by its own terms in § III(G)(1)(c), the policy applies the term to additional insureds.  The Court rejects all other arguments to the contrary.